UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD A. HORTON, JR.,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

       Case No. 1:13-cv-1361
       Hon. Hugh W. Brenneman, Jr.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on October 22, 1969 (AR 296).[1] He alleged a disability onset date of December 11, 2007 (AR 296). Plaintiff completed the 12th grade and had previous employment as a production worker (AR 302). Plaintiff identified his disabling conditions as three ruptured discs in his back, tendinitis in both elbows, and spondylolysis[2] (AR 301). An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on August 17, 2012 (AR 111-19). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] In his application for DIB, plaintiff listed this condition as "spongiolystisis." While there is no mention of such a condition in the record, the Court notes that an x-ray of plaintiff's lumbar spine in December 2010 noted that plaintiff appeared to have "spondylolysis" (AR 380).

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 11, 2007 and that he met the insured status requirements of the Act through March 31, 2013 (AR 113). At the second step, the ALJ found that plaintiff had the following severe impairments: anterolisthesis; left ulnar neuropathy and epicondylitis status-post surgery; right knee degenerative joint disease; and a history of alcohol and drug abuse (AR 113). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 114). Specifically, plaintiff did not meet the requirements of Listings 1.02 (major dysfunction of a joint), 1.03 (reconstructive surgery or surgical arthodesis of a major weight-bearing joint) or 1.04 (disorders of the spine) (AR 114).

The ALJ decided at the fourth step:

> [T]hat the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently and in an eight-hour workday, stand and/or walk six hours and sit for six hours. He could occasionally operate hand controls for pushing and pulling. The claimant could frequently flex or extend with his left elbow but could not perform forceful gripping or grasping with his left hand. He could not operate foot controls with his right lower extremity. The claimant could not rotate his head or neck to the left greater than 45 degrees from a forward looking position. He could frequently balance, kneel, crouch, and crawl, occasionally stoop and climb ramps or stairs but never climb ladders, ropes, or scaffolds. The claimant could no more than occasionally ambulate over uneven or hard surfaces. He should avoid concentrated exposure to extreme cold, vibration, or hazards.

(AR 114-15). The ALJ also found that plaintiff was unable to perform his past relevant work (AR 117).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 118). Specifically, plaintiff could perform the following work: inspector (6,000 jobs); assembler (6,000 jobs); and cleaner/housekeeper (8,000 jobs) (AR 118).[3] Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2003 (the alleged onset date) through June 12, 2012 (the date of the decision) (AR 98-99).

### III. ANALYSIS

Plaintiff raised two issues on appeal:

> **A. The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician and by improperly weighing the medical evidence.**

Plaintiff contends that the ALJ erred because he did not properly consider the opinion of plaintiff's treating physician, Roger Holman, D.O. (AR 116). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the

---

[3] The ALJ's decision did not set forth the location of these jobs. However, the vocational expert testified that all of the jobs were located in the State of Michigan (AR 163).

5

claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ's only reference to Dr. Holman's treatment is from November 2009, when the doctor noted that plaintiff had right elbow pain and then provided an injection (AR 116, 359). The ALJ gave little weight to Dr. Holman's cryptic May 2012 opinion that plaintiff was "unemployable":

> The claimant's treating physician, Roger Holman, D.O., opined in May 2012 that the claimant had neck degenerative joint disease that radiated into his arms and right arm numbness that made him unemployable (l2F). The final responsibility for deciding the issue of residual functional capacity and the ultimate issue of disability

6

> is reserved to the Commissioner. A statement by a medical source the claimant is "disabled" or "unable to work" does not mean such claimant will be determined to be disabled as this term is defined in the Act. The opinion expressed is quite conclusory, providing little explanation of the evidence relied on in forming this opinion. Based on the medical evidence of record, the undersigned gave this opinion little weight.

(AR 117). Although Dr. Holman was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled"). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984). Accordingly, plaintiff's claim of error will be denied.

> **B. The post-hearing evidence confirmed that the ALJ did not have substantial evidence to support his finding regarding plaintiff's credibility, and the Appeals Council committed reversible error by failing to consider that evidence.**

Plaintiff raises a separate issue with respect to his back pain, contending that the ALJ failed to properly evaluate his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d

377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, the ALJ found that plaintiff's allegations of disabling back pain were not credible:

> The claimant testified that he had low back and elbow pain with surgery done to his left elbow. He said that he returned to work but he was not able to do his job well. He stated that he had injection treatments in his elbow and back. The claimant also stated that he had broken right wrist and was released to work after recovery but fired. He said that he had numbness in his right arm to his fingers. He further stated that he had several left thumb surgeries. The claimant stated that his thumb did not have much feeling but it was worse with cold. He estimated that he could lift a gallon of milk and he had to shift positions for pain relief between standing, sitting, squatting, lying, and walking with hard surfaces making his pain worse. He stated that he did not take pain medication but took anti-inflammatory medication. He rated his pain to be as high as a ten on a scale often. Further, he stated that he could not turn his head to the right. The claimant testified that he used marijuana for pain relief in the past but no longer used marijuana.
>
> The claimant stated in a Function Report in October 2010 that he had back and elbow pain with the need to shift positions often for pain relief. He stated that he needed to take frequent breaks when doing household chores, including mowing, and that he had trouble with uneven and hard surfaces. He also stated that he had trouble sleeping and had problems focusing because of it. Further, he stated that he needed to change positions often for pain relief and used a cane (4E).

(AR 115).

In reviewing the medical evidence, the ALJ noted that plaintiff had complained of back pain since February 2007 (AR 116). More recently, plaintiff sought treatment in 2012:

> In an emergency room visit in January 2012, the claimant was found to have a tender lumbar spine and mild cervical spine tenderness but no deformity, crepitus, swelling, or ecchymosis and negative straight-leg raise with neurologic motor and vascular exam intact (10F/8).
>
> In February 2012, he complained of neck and back pain to his treatment provider with City on a Hill Ministries Health Clinic and was found to have full cervical range of motion (9F). His health care provider with Love Inc. of the Tri Cities Free Health Clinic found in March 2012 that he had decreased neck range of motion. He was also found to have fair to poor range of motion of his lumbar spine and he stood tilted to the left (11F). Randall Street Medical provider found reduced range of cervical spine motion (15F). Cervical spine x-rays in April 2012 showed neuroforaminal narrowing on the left (14F/5).

(AR 116).

With respect to opinion evidence, a State Disability Determination Services (DDS) physician, Shanti Tanna, M.D., "opined in January 2011 that the claimant was limited to light work, occasional use of hands for pushing and pulling hand controls, stooping, and climbing ramps or stairs but frequent balancing, kneeling, crouching, and crawling" (AR 117). "Dr. Tanna also opined that the claimant should avoid concentrated exposure to cold, vibrations, and hazards" (AR 117). The ALJ gave this opinion considerable weight "because the evidence received into the record, after the initial determination, did not provide any new or material information that would alter any findings about the claimant's residual functional capacity" (AR 117).

The ALJ concluded that the DDS consultant's determination that plaintiff could "perform light work with occasional to frequent postural activities was well supported by the objective medical evidence of record" (AR 117). However, the ALJ found that the balance of plaintiff's subjective complaints were not credible:

> The undersigned further limited the claimant's walking, use of his extremities, and neck movement based on his subjective complaints. The claimant's allegations of disabling symptoms and pain were all considered in the light most favorable to the claimant. However, the undersigned concludes that the claimant's subjective complaints do not warrant any additional limitations beyond those established in the residual functional capacity.

(AR 117). Based on the medical record developed during the administrative appeal and the extensive restrictions set forth in the RFC, the Court does not find a compelling reason to disturb the ALJ's credibility determination. *See Smith*, 307 F.3d at 379.

However, plaintiff has presented new medical evidence which may support his alleged limitations. Om August 15, 2012, two days before the ALJ issued his decision denying benefits, plaintiff reported to the emergency room complaining of insomnia and pain so severe that he had thoughts of suicide (AR 83). On August 21, 2012, treatment notes from David Lowry, M.D. noted that an MRI revealed narrowing of the cervical spine (AR 71). The doctor diagnosed plaintiff as having severe cervical stenosis manifested by symptoms of radiculopathy and early signs of myelopathy (AR 71). The doctor recommended surgery for a cervical discectomy and fusion across C5/6 and C6/7 (AR 71). The surgery was performed on September 7, 2012, less than one month after the ALJ's decision (AR 80-82). Plaintiff contends that the Commissioner should review his medical record related to the surgery, because it was used to treat the same condition which was the subject of his disability application.

As an initial matter, plaintiff contends that the Appeals Council erred in failing to consider this evidence. Plaintiff's claim is without merit. There is no basis for this court to review the Appeals Council's alleged error. "Only final decisions of the [Commissioner] are subject to judicial review under [42 U.S.C.] § 405(g)." *Willis v. Secretary of Health and Human Servs.*, No. 93-6337, 1995 WL 31591 at * 2 (6th Cir. 1995), *citing Califano v. Saunders*, 430 U.S. 99, 108

(1977). When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). "While new material evidence may be submitted for consideration to the appeals council pursuant to 20 C.F.R. § 404.970, on appeal we still review the ALJ's decision, not the denial of review by the appeals council." *Id.* Accordingly, the Court will not review the Appeals Council's action.

The Court will, however, address plaintiff's request for a sentence-six remand. When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Here, plaintiff has established materiality. Plaintiff visited the emergency room with this cervical problem while his claim was still pending before the ALJ. Less than a week after the emergency room visit, on August 21, 2012, Dr. Lowry noted that plaintiff's subjective complaints were consistent with the MRI results and his examination, and offered to schedule surgery, which was performed on September 7, 2012. Dr. Lowry's notes and the subsequent surgery provide objective evidence which support some of plaintiff's alleged limitations. There is a reasonable probability that this new medical evidence could result in a more favorable credibility determination, a different RFC and a different disposition of his disability claim.

Plaintiff has also shown good cause for failing to present this evidence during the course of the administrative proceeding. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). To show good cause a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). Here, the record reflects that plaintiff visited the emergency room while his administrative appeal was pending for the purpose of seeking treatment for his back and neck pain. Plaintiff's medical situation developed rather rapidly, resulting in surgery three weeks after the ALJ's decision. Plaintiff had no opportunity to present evidence of this ongoing medical condition to the ALJ prior to the issuance of the decision.

Accordingly, plaintiff is entitled to a sentence-six remand with respect to his cervical condition. On remand, the Commissioner should review plaintiff's medical records related to the cervical condition treated by his September 7, 2012 surgery (AR 19-65 and 71-107) and to re-evaluate plaintiff's credibility and RFC in light of those records.

### IV. CONCLUSION

The ALJ's decision will be remanded pursuant to sentence six of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to review plaintiff's medical records related to the cervical condition treated by his September 7, 2012 surgery (AR 19-65 and 71-107) and to re-evaluate plaintiff's credibility and RFC in light of those records. An order consistent with this opinion will be issued forthwith.

Dated: March 23, 2015　　　　　　　　　　/s/ Hugh W. Brenneman, Jr.
　　　　　　　　　　　　　　　　　　　　HUGH W. BRENNEMAN, JR.
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge